

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2002

# Adams Parking Garage v. Scranton

Precedential or Non-Precedential:

Docket 01-3027

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Adams Parking Garage v. Scranton" (2002). *2002 Decisions.* Paper 214.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/214

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 01-3027


ADAMS PARKING GARAGE, INC.; SCRANTON LIFE REALTY CO.;
ANTHONY J. RINALDI,

Appellants

v.

CITY OF SCRANTON; JAMES CONNORS, Honorable, Individually and
as Mayor of the City of Scranton; EDWARD WALSH; BRIAN REAP;
CHRISTOPHER DOHERTY; JOHN J. POCIUS; ALEX
HAZZOURI; PARNELL JOYCE; BOYD HUGHES;
SCRANTON REDEVELOPMENT AUTHORITY


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 99-1212)
District Judge: Honorable A. Richard Caputo


Argued March 7, 2002

Before: SCIRICA and COWEN, Circuit Judges,
RESTANI, Judge, United States Court of International Trade

(Filed: March 26, 2002)

Robert J. Sugarman (argued),
Carl W. Ewald, Sugarman and Associates, P.C.
Counsel for appellants.

David E. Heisler (argued),
Lenahan & Dempsey, P.C.,
Counsel for all appellees except Boyd Hughes.

Jeffrey B. McCarron, Esq. (argued),
Swartz, Campbell & Detweiler,
Counsel for appellee Boyd Hughes.

OPINION


RESTANI, Judge.

This matter comes before the court on appeal from an order of the district court granting defendants' motions for summary judgment and entering judgment in favor of defendants and against plaintiffs. It arises from a condemnation action concerning Adams Parking Garage, Inc.'s ("Adams Parking") leasehold interest in the Casey Parking

Garage (the "Garage") located in Scranton, Pennsylvania.  Anthony J. Rinaldi ("Rinaldi") is the sole shareholder of Adams Parking.  He is also the sole shareholder of the Scranton Life Realty Company ("Scranton Life"), which has offices in Scranton, Pennsylvania.

In 1989, Scranton Life sold certain properties, including the Garage, to the City of Scranton (the "City") in lieu of condemnation.  The sales agreement included a lease provision, whereby the City, upon purchasing the Garage from Scranton Life, would lease the Garage back to Adams Parking, apparently so that Scranton Life could ensure parking for its tenants.  The lease provided an initial five-year term and gave Adams Parking the right to renew for five additional five-year terms.  The agreement contained a provision allowing either party to terminate the lease should the Garage be condemned by "any governmental authority."  2 app. at 53a.

Adams Parking operated the Garage pursuant to the terms of the parties' agreement for nine years.  During that period, however, City officials were engaged with developers and officials of the Scranton Redevelopment Authority (the "SRA") regarding the development of a blighted area that included the Garage.  On September 9, 1997, the SRA adopted a resolution approving a redevelopment proposal for the "Lackawanna East Redevelopment Area," a section of the City encompassing the Garage.  Determining that the area was blighted, the SRA condemned the Garage and took ownership from the City on October 2, 1998.  On December 9, 1998, the City terminated its lease with Adams Parking.

Adams Parking challenged the condemnation of the Garage in state court.  On June 29, 1999, the Court of Common Pleas of Lackawanna County, finding that the Garage was "in a[n] extremely deteriorating condition," 2 app. at 243a, upheld the condemnation.  Furthermore, the court found that the SRA's certification of blight was in accordance with the law and not done arbitrarily, capriciously, or in bad faith.  Id. at 248a.  On appeal, the Commonwealth Court affirmed and the Supreme Court of Pennsylvania denied allocatur.

On July 9, 1999, Rinaldi, Adams Parking and Scranton Life filed the instant suit in the United States District Court for the Middle District of Pennsylvania, alleging that the defendants conspired to deprive them of their constitutionally protected property interests in the Garage for various personal, political and economic reasons.  See 2 app. at 38a.  The second amended complaint, brought pursuant to 42 U.S.C.  1983, contains substantive and procedural due process claims, an equal protection claim, and a claim for breach of contract under Pennsylvania law.  On April 26, 2001, the district court granted defendants' motions for summary judgment and entered judgment in their favor and against plaintiffs.  Rinaldi, Adams Parking and Scranton Life timely appealed.

As an initial matter, the issue as to whether the condemnation itself was lawful and done for the legitimate purpose of eradicating blight has already been determined and was upheld by the courts of the Commonwealth.  Collateral estoppel, or issue preclusion, "prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated.  The identical issue must have been necessary to final judgment on the merits, and the party against whom the plea is asserted must have been a party, or in privity with a party, to the prior action and must have had a full and fair opportunity to litigate the issue in question."  Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995) (citing Allen v. McCurry, 449 U.S. 90, 94-95, 101 S.Ct. 411, 414-15 (1980)).  Collateral estoppel prevents a question of law or an issue of fact that has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit.  See Day v. Volkswagenwerk Aktiengesellschaft, 464 A.2d 1313, 1318 (Pa. Super. Ct. 1983) (citations omitted).

The propriety of the condemnation of the Garage was unsuccessfully challenged by Adams Parking's preliminary objections in the Court of Common Pleas and appeals to the Commonwealth Court and the Pennsylvania Supreme Court.  The issues asserted by Adams Parking in the state action included whether the Garage was, in fact, blighted, and whether the SRA acted arbitrarily, capriciously or in bad faith in determining that it was.  In both actions, Adams Parking claimed that the condemnation was a "sham" contrived so that the City could break its lease and deny Adams Parking compensation.  See 2 app. at 253a.  After nine days of trial, the Court of Common Pleas found that the Garage was in an "extremely deteriorating condition" and that the SRA's certification of blight was

legitimate and not arbitrary, capricious, or done in bad faith or for an improper motive. Id. at 87a, 92a. The Commonwealth Court affirmed and the Pennsylvania Supreme Court denied allocatur. Thus, the district court properly found that "[t]he condemnation itself cannot be challenged" as "[i]t has already been fully litigated and conclusively determined in the courts of the Commonwealth." App. 12a.

Upon the lawful condemnation of the Garage, the City invoked the condemnation clause to terminate the parties' lease. The lease itself states that it is terminable if the Garage is condemned by a "public authority created under [the Commonwealth's] laws." 2 App. at 53a. The SRA is such a public authority. See 35 Pa. Cons. Stat. Ann.  1704. Further, despite appellants' assertions to the contrary, the SRA is an authority completely separate from the City. See Herriman v. Carducci, 380 A.2d 761, 763 (Pa. 1977) ("An authority under the Urban Redevelopment Law is an agent of the Commonwealth and not of the local government body. As can be seen, the legislature in no uncertain terms has made it clear that a redevelopment authority is a completely separate entity from the city.") (citations omitted).

The SRA's condemnation triggered the clear and unambiguous lease provision that allowed the City to terminate upon condemnation of the Garage by "any governmental authority." 2 App. at 53a. Where the contractual language is clear and unambiguous, the court "must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." App. at 11a (quoting Lobaugh v. Lobaugh, 753 A.2d 834, 836 (Pa. Super. Ct. 2000)). Accordingly, there was no breach when, pursuant to the condemnation provision, the City terminated its lease with appellants.

Next, claiming that their substantive and procedural due process rights were violated, appellants rely on Parkway Garage Inc. v. City of Philadelphia, 5 F.3d 685 (3d Cir. 1993), arguing that the City had an improper motive in terminating the lease.

However, "[t]o prevail on substantive and procedural due process claims, plaintiffs must have been deprived of a property interest because of either arbitrary and capricious government action or a denial of fair legal process." Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1290 (3d Cir. 1993). Here, appellants' substantive and procedural due process claims fail for lack of a property interest protected by the Due Process Clause. Adams Parking's lease allowed the City to terminate upon the property's condemnation, even where the condemnor was the SRA. See 2 App. at 53a. With no legitimate claim of entitlement to a longer lease under state law, appellants were deprived of no cognizable property interest. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings from an independent source such as state law . . . .").

Appellants finally allege that other, similarly situated, property owners were compensated for the condemnation of their property. Appellants cite Village of Willowbrook v. Olech for the proposition that a "class of one" may bring an equal protection claim "where the plaintiff alleges that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. 562, 564, 120 S.Ct. 1073, 1074 (2000). However, "[u]nlike Willowbrook, this case is at the summary judgment stage, and to survive summary judgment plaintiff must do more than merely state an equal protection claim; it must produce evidence to support its claims of disparate treatment." American Fabricare v. Township of Falls, 101 F. Supp. 2d 301, 309 n.14 (E.D. Pa. 2000).

Here, appellants presented no evidence that Adams Parking, which had a lease containing a termination clause, was similarly situated to the City's other tenants on the parking garage property and no evidence of benefits that others allegedly received. Accordingly, because they presented no evidence that others, who were similarly situated, were treated differently, the district court properly entered summary judgment as to appellants' equal protection claims.

Accordingly, the order of April 26, 2001 granting the defendants' motions for summary judgment and entering judgment in their favor, will be affirmed.

———

TO THE CLERK:
Please file the foregoing opinion.

                          /s/Jane A. Restani
                     Judge

DATED:  March 27, 200