Deborah R. Malloy and          :
Edward C. Malloy,            :
         Petitioners       :
                            :
         v.                :
                            :
Hon. H. Geoffrey Moulton, Jr.,  :
Pennsylvania Court Administrator,   :   No. 493 M.D. 2021
         Respondent    :   Submitted:  October 7, 2025

OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                        FILED:  December 17, 2025

Before this Court are the Honorable H. Geoffrey Moulton, Jr., former Pennsylvania Court Administrator's (Moulton),[1] Preliminary Objections to Deborah R. Malloy's and Edward C. Malloy's (collectively, Petitioners) pro se Petition for Review in mandamus (Petition) filed in this Court's original jurisdiction.[2]

---

[1] Moulton retired on September 30, 2023.  Andrea Britt Tuominen, Esquire, succeeded Moulton and is the current Pennsylvania Court Administrator.

[2] Petitioners originally commenced this matter in the Delaware County Common Pleas Court (Common Pleas).  *See* Common Pleas Docket No. CV-2021-003730.  On October 4, 2021, Petitioners filed their fifth amended complaint and, thereafter, a motion to transfer this matter to the proper forum.  On October 22, 2021, Moulton filed the Preliminary Objections.  On December 28, 2021, Common Pleas sustained the Preliminary Objections and dismissed the action with prejudice.  On June 28, 2022, Common Pleas denied Petitioners' Petition to Recuse Judge.  On September 19, 2022, Common Pleas denied as moot Petitioners' Petition to Transfer Case. Petitioners appealed from all three orders to this Court.  *See* Pa. Cmwlth. Nos. 971 C.D. 2022, 1342 C.D. 2022, and 133 C.D. 2023, respectively (*Moulton I*).  On April 16, 2024, Petitioners filed a Motion to Enforce the Code of Conduct for Employees of the Unified Judicial System relative to each appeal.  This Court consolidated the matters and, on May 3, 2024, vacated Common Pleas' December 28, 2021 order, directed transfer of the matter to the Pennsylvania Supreme Court (Supreme Court), and dismissed the June 28 and September 19, 2022 orders and motion to transfer as moot.  However, by July 16, 2024 Order, the Supreme Court transferred the matter to this Court

Petitioners seek to compel Moulton to notify the Judicial Conduct Board (JCB), pursuant to Pennsylvania Rule of Judicial Administration (Rule) 703(G)(1),[3] that Delaware County Common Pleas Court (Common Pleas) judges - the Honorable Barry C. Dozor (Judge Dozor) and the Honorable G. Michael Green (Judge Green) (collectively, the Common Pleas Judges) - failed to report decisions that remained undecided after 90 days. Also before this Court is Petitioners' April 16, 2024 Motion to Enforce the Code of Conduct for Employees of the Unified Judicial System (UJS ECOC) (Motion to Enforce). After review, this Court sustains Moulton's

---

on the basis that Moulton, as the Court Administrator, is not a jurist but an officer of the Commonwealth government and, thus, the matter belongs in this Court's original jurisdiction.

By October 3, 2024 Order, this Court adopted the Common Pleas filings into this docket as though they were initially filed in this Court's original jurisdiction. *See* Oct. 3, 2024 Order at 1. This Court's Order further declared that it would treat Petitioners' fifth amended complaint (the operative pleading), as a Petition for Review pursuant to and governed by Chapter 15 of the Pennsylvania Rules of Appellate Procedure. *See id*. This Court added that the Preliminary Objections are the operative responsive pleading. *See id*. at 2. This Court further directed:

> The Prothonotary shall transfer Petitioners' April 16, 2024 "Motion to Enforce the Code of Conduct for Employees of the Unified Judicial System" (Motion to Enforce) and [Moulton's a]nswer thereto, filed at [Pa. Cmwlth. Nos.] 971 C.D. 2022, 1342 C.D. 2022, and 133 C.D. 2023, to th[is D]ocket . . . . Petitioners' request for oral argument on the Motion to Enforce is DENIED. The Motion to Enforce shall be listed for disposition with the Preliminary Objections.

Oct. 3, 2024 Order at 2.

[3] Rule 703(A) declared the Pennsylvania Supreme Court's policy that matters before the Unified Judicial System shall "be brought to a fair conclusion as promptly as possible, consistent with the character of the matter and the resources of the system[,]" and the Supreme Court implemented rules to help it "oversee the prompt and proper disposition of the business of the Pennsylvania courts." Pa.R.J.A. 703(A). To that end, Rule 703(B)(2) specifies, in relevant part: "Every judge shall compile a semi-annual report stating whether the judge has any matter that has been submitted to the judge for decision and remains undecided for [90] days or more as of the last day of the reporting period." Pa.R.J.A. 703(B). Rule 703(G)(1) provides: "The Court Administrator of Pennsylvania shall immediately notify the [JCB] if a judge fails to file a timely report as required by this [R]ule [703]." Pa.R.J.A. 703(G)(1).

Preliminary Objection related to standing and dismisses the Petition. This Court also dismisses the Motion to Enforce.

## Background[4]

As Pennsylvania Court Administrator, Moulton "serve[d] at the pleasure of the [Pennsylvania] Supreme Court[ (Supreme Court),]" and was "responsible for the prompt and proper disposition of the business of all courts and magisterial district judges."[5] Rule 501(a), Pa.R.J.A. 501(a). Rule 703(G)(1) requires that "[t]he Court Administrator of Pennsylvania shall immediately notify the [JCB] if a judge fails to file a timely report as required by [Rule 703]." Pa.R.J.A. 703(G)(1).

In 2015, Petitioners filed a lawsuit in Common Pleas at Docket No. CV-2015-011267 against numerous defendants (2015 Litigation) over which the Common Pleas Judges, now disqualified,[6] previously presided. *See* Petition at 3-4; *see also* Petition ¶¶ 10-12. On October 4, 2021, Petitioners filed a complaint in mandamus in Common Pleas seeking to compel Moulton, in his role as Pennsylvania Court Administrator, to notify the JCB pursuant to Rule 703(G)(1), that the Common Pleas Judges failed to report and/or timely report decisions in the 2015 Litigation that remained undecided after 90 days.[7] *See* Petition ¶¶ 3-6, 10-20, 58. Moreover,

---

[4] The facts are as alleged in the Petition.

[5] Article V, section 10(a) of the Pennsylvania Constitution declares: "The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace[.]" PA. CONST. art. V, § 10(a). Article V, section 10(b) of the Pennsylvania Constitution adds: "The Supreme Court shall appoint a court administrator and may appoint such subordinate administrators and staff as may be necessary and proper for the prompt and proper disposition of the business of all courts and justices of the peace." PA. CONST. art. V, § 10(b).

[6] Petitioners repeatedly reference in the Petition that the Common Pleas Judges were *removed*, but do not state why they were removed.

[7] Petitioners declare that they have access to Judge Green's and Judge Dozor's Rule 703 Reports, but did not attach them to the Petition due to confidentiality concerns. *See* Petition ¶ 57.

Petitioners maintained that the Common Pleas Judges continued to issue orders in the 2015 Litigation, *see* Petition ¶¶ 50-53, and Judge Dozor manipulated decisions in favor of the parties Petitioners were suing and with a blind eye to attorney misconduct.[8]  *See* Petition ¶¶ 54-56.  They also asserted that although Rule 703(G)(1) required Moulton to inform the JCB of the Common Pleas Judges' multi-year failures to list decisions that remained undecided after 90 days, he did not do so.  *See* Petition ¶¶ 58-59.  Accordingly, Petitioners sought to have Common Pleas compel Moulton to comply with his statutorily mandated JCB notification requirement.  *See* Petition ¶ 59; *see also* Petition at 15 (*Ad Damnum* Clause).

On October 22, 2021, Moulton filed the Preliminary Objections to the Petition, therein asserting that the Petition should be dismissed due to Petitioners' lack of standing, Petitioners' failure to state a valid mandamus claim, and Moulton's sovereign immunity protection.[9]  Petitioners opposed the Preliminary Objections. The parties filed their respective briefs.

---

[8] Petitioners also contend that a Chester County judge who replaced the Common Pleas Judges in the 2015 Litigation - the Honorable Robert J. Shenkin (Senior Judge Shenkin) - had a duty under Canon 2, Rule 2.15 of the Judicial Conduct Code to report the Common Pleas Judges' misconduct but failed to do so and, thus, must be disqualified because any decision he would render in the 2015 Litigation would be "fatally tainted[.]"  Petition at 4; *see also* Petition at 3. However, because Senior Judge Shenkin is not one of the Common Pleas Judges whose purported Rule 703 violations form the basis for Moulton's purported Rule 703(G)(1) violation, *see* Petition at 3-4 and *Ad Damnum* Clause, Petitioners have failed to state a cause of action against Senior Judge Shenkin for which this Court may grant relief.  Accordingly, this Court will only address Petitioners' claims as to the Common Pleas Judges.

[9] Moulton also objected to the Petition on the basis that Common Pleas lacked subject matter jurisdiction and previously appealed to this Court on that basis. *See Moulton I.*  In *Moulton I* (Pa. Cmwlth. Nos. 971, 1342 C.D. 2022, 133 C.D. 2023, filed May 3, 2024), this Court transferred Petitioners' mandamus action to the Supreme Court, stating that it directly implicated the Supreme Court's supervisory and administrative responsibilities.  However, on July 16, 2024, the Supreme Court returned the matter to this Court in its original jurisdiction, declaring that this Court erred by concluding that it lacked jurisdiction where

4

On April 16, 2024, Petitioners filed the Motion to Enforce, therein seeking to have the current Pennsylvania Court Administrator, Andrea Britt Tuominen, Esquire (Tuominen), comply with the UJS ECOC and report the Common Pleas Judges and their replacement, Chester County Common Pleas Court Senior Judge, the Honorable Robert J. Shenkin (Senior Judge Shenkin) to the JCB for violating Rule 703(G)(1), or risk sanctions. On May 1, 2024, Moulton opposed the Motion to Enforce, declaring that the Motion to Enforce should be dismissed due to the UJS ECOC, Petitioners' lack of standing, and because Petitioners could file complaints with the Office of Disciplinary Counsel and JCB if they believe misconduct occurred.[10]

The Preliminary Objections and Motion to Enforce are now ripe for this Court's disposition.

---

> [Petitioners] . . . are not seeking mandamus relief against a jurist. Rather, they are pursuing redress against [Moulton] as Court Administrator, who is not considered a "court." This mandamus matter thus does not fall within th[e Supreme] Court's original jurisdiction.
>
> Rather, the Court Administrator is an officer of the Commonwealth government for purposes of the Judicial Code. *See* 42 Pa.C.S. § 102 (defining "Commonwealth government" as "including the courts and other officers or agencies of the unified judicial system"). As such, this mandamus actions falls within the Commonwealth Court's original jurisdiction. *See* 42 Pa.C.S. § 761(a)(1) (specifying that the Commonwealth Court shall have original jurisdiction in all civil actions and proceedings against the Commonwealth government).

Supreme Ct. July 16, 2024 Order at 1-2. Accordingly, Moulton's challenge to Common Pleas' jurisdiction is now moot.

[10] Moulton also opposed the Motion to Enforce on the basis that Common Pleas lacked jurisdiction. However, the Supreme Court resolved the jurisdictional issue by transferring the matter to this Court, *see Moulton I*, and this Court ordered that Petitioners' Motion to Enforce would be decided along with Moulton's Preliminary Objections. *See* Oct. 3, 2024 Order.

**Discussion**

Preliminary Objections

Initially,

> [i]n ruling on preliminary objections, [this Court] must "accept as true all well-pleaded material allegations in the petition for review," as well as inferences reasonably deduced therefrom. *Garrison v. Dep't of Corr.*, 16 A.3d 560, 563 n.5 (Pa. Cmwlth. 2011). Th[is] Court need not accept as true conclusions of law, "unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id.* To sustain preliminary objections, "it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010).

> A preliminary objection in the nature of a demurrer admits well-pleaded facts and inferences reasonably deduced therefrom in order to test the legal sufficiency of a petition for review. *Id.* A demurrer can "be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted." *Id.*

*Robinson v. Pa. Parole Bd.*, 306 A.3d 969, 972 n.7 (Pa. Cmwlth. 2023), *aff'd*, 328 A.3d 467 (Pa. 2024). "Thus, th[is C]ourt may determine only whether, on the basis of the [petitioner's] allegations, he or she possesses a cause of action recognized at law." *Fraternal Ord. of Police Lodge No. 5, by McNesby v. City of Phila.*, 267 A.3d 531, 541 (Pa. Cmwlth. 2021).

Moulton first objected to the Petition on the basis that Petitioners lacked standing to bring this mandamus action because they failed to articulate a substantial, direct, and immediate interest in ensuring that Moulton reported the Common Pleas Judges to the JCB, particularly when Petitioners were not authorized to know whether Moulton made such reports. Moulton declared that Petitioners offer only unsupported allegations against the Common Pleas Judges for which they could have

6

lodged complaints with the JCB, and they supply no examples of how they are aggrieved by Moulton's purported failure to comply with Rule 703(G)(1).

"In seeking judicial resolution of a controversy, a party must establish as a threshold matter that he has standing to maintain the action." *Stilp v. Gen. Assembly*, 940 A.2d 1227, 1233 (Pa. 2007). "[T]he core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution of his challenge." *Fumo v. City of Phila.*, 972 A.2d 487, 496 (Pa. 2009). "An individual can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct[,] and immediate interest in the outcome of the litigation." *Id*.

> A substantial interest in the outcome of litigation is one that surpasses the common interest of all citizens in procuring obedience to the law. A direct interest requires a causal connection between the asserted violation and the harm complained of. An interest is immediate when the causal connection is not remote or speculative.

*Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1215 (Pa. Cmwlth. 2018) (citations omitted).

Here, Petitioners were dissatisfied with the manner in which the Common Pleas Judges conducted the 2015 Litigation. As a result, it appears that they obtained the Common Pleas Judges' Rule 703 reports. Based thereon, Petitioners discovered, despite that several of the Common Pleas Judges' rulings in the 2015 Litigation remained pending after 90 days, the Common Pleas Judges either declared in their Rule 703 reports they had no outstanding matters, *see* Petition ¶¶ 48, 51, or they "failed to file timely reports[] for a number of years[.]" Petition ¶ 58. Although Petitioners spent a significant portion of their Petition declaring how the

Common Pleas Judges acted improperly, their mandamus relief relates solely to Moulton, as the Court Administrator of Pennsylvania.[11]

Petitioners ask this Court to compel Moulton to comply with Rule 703(G)(1)'s requirement to immediately notify the JCB that the Common Pleas Judges failed to file and/or timely file reports as required by Rule 703. In a passing reference in their answer to the Preliminary Objections, Petitioners state: "When a judge violates [Rule] 703 s[he]/he deprives a party (such as [Petitioners]) of due process[.]" Ans. to Prelim. Objs. at 14. Although Rule 703(A) declares that its purpose is to ensure that matters before Pennsylvania courts are concluded "as promptly as possible," Pa.R.J.A. 703(A), Petitioners failed to express an interest they have in their mandamus action "that surpasses the common interest of all citizens in procuring [Moulton's] obedience to [Rule 703(G)(1)]." *Phantom Fireworks*, 198 A.3d at 1215; *see also Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 282 (Pa. 1975) ("[T]he requirement of a 'substantial' interest simply means that the individual's interest must have substance - there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law.").

While Petitioners may believe if Moulton had reported the Common Pleas Judges to the JCB, the Common Pleas Judges would either have been sanctioned or removed from the 2015 Litigation, the Petition clearly reflects that the Common Pleas Judges no longer presided over the 2015 Litigation as of at least October 2021, so any sanctions the JCB could impose based on Moulton's

---

[11] Petitioners also raise that Administrative Office of Pennsylvania Court (AOPC) counsel, Nicole A. Feigenbaum, Esquire's representation of the Common Pleas Judges, Senior Judge Shenkin, and Moulton was an impermissible conflict of interest. Under the Supreme Court's direction, the Pennsylvania Court Administrator oversees the AOPC. *See* Rules 501, 502, 504, and 505, Pa.R.J.A. 501, 502, 504, 505.

notification would have been of no benefit to Petitioners' 2015 Litigation.[12]  In addition, in response to every one of Moulton's references in the Preliminary Objections to Petitioners' 2015 Litigation, *see* Prelim. Objs. ¶¶ 20-23, 31-32, Petitioners "denied the pendency of any litigation [wa]s relevant." *See* Ans. to Prelim. Objs. ¶¶ 20-23; *see also id*. at ¶¶ 31-32.  Petitioners also failed to state whether or how they were harmed if Moulton failed to notify the JCB of the Common Pleas Judges' Rule 703 violations, or what they might gain if Moulton did so.  Moreover, because article 5, section 18(a)(8) of the Pennsylvania Constitution declares that any notifications Moulton would make to the JCB are confidential,[13] Petitioners do not know whether Moulton has, in fact, already complied with Rule 703(G)(1).  Thus, Petitioners have not pled an interest in the outcome of this mandamus action that is substantial.

Further, because the Petition does not reflect a causal connection between Moulton's purported failure to report the Common Pleas Judges to the JCB and the 2015 Litigation, Petitioners' interest is not direct.  Moreover, Petitioners' interests are not immediate but, rather, are remote and speculative, where Petitioners generally assert that the Common Pleas Judges' misconduct has been ongoing since at least 2017, but they did not commence this action against Moulton until 2021, *after* the Common Pleas Judges were disqualified from the 2015 Litigation.  In addition, Moulton's duty to notify the JCB arose only if and when the Common Pleas Judges failed to submit proper *semi-annual* reports.  Thereafter, the JCB must

---

[12] Pursuant to article 5, section 18(d) of the Pennsylvania Constitution, sanctions could include: suspension with or without pay, removal, indictment, disbarment, impeachment, and/or forfeiture of election for other public office. *See* PA. CONST. art. V, § 18(d).

[13] Article 5, section 18(a)(8) of the Pennsylvania Constitution provides, in relevant part: "Complaints filed with the [JCB] . . . shall not be public information.  Statements, testimony, documents, records[,] or other information or evidence acquired by the [JCB] in the conduct of an investigation shall not be public information." PA. CONST. art. V, § 18(a)(8).  Although Petitioners claim to have access to the Common Pleas Judges' Rule 703 reports, they do not know whether Moulton reported any violations related thereto.

undertake investigations and may or may not submit charges against the Common Pleas Judges to the Court of Judicial Discipline. *See* article 5, section 18(a)(7) of the Pennsylvania Constitution.[14] If the Court of Judicial Discipline receives charges from the JCB, it must conduct a hearing to determine whether sanctions should be imposed. *See* article 5, section 18(b)(5) of the Pennsylvania Constitution.[15] Clearly, even if Moulton made the necessary notifications, the outcome thereof would be remote and speculative. Therefore, Petitioners have not pled an interest in the outcome of this mandamus action that is direct and immediate. In the absence of a substantial, direct, and immediate interest in having this Court compel Moulton to act pursuant to Rule 703(G)(1), Petitioners are not aggrieved and, thus, lack traditional standing to bring this mandamus action against Moulton.

In their answer to the Preliminary Objections, Petitioners claim that Moulton's purported violation of Rule 703(G)(1) may escape judicial review if this Court does not grant them standing as taxpayers. They cite to *Seeton v. Pennsylvania Game Commission*, 937 A.2d 1028 (Pa. 2007), to support their position.

---

[14] Article 5, section 18(a)(7) of the Pennsylvania Constitution states:

> The [JCB] shall receive and investigate complaints regarding judicial conduct filed by individuals or initiated by the [JCB]; issue subpoenas to compel testimony under oath of witnesses, including the subject of the investigation, and to compel the production of documents, books, accounts[,] and other records relevant to the investigation; determine whether there is probable cause to file formal charges against a justice, judge[,] or justice of the peace for conduct proscribed by this section; and present the case in support of the charges before the Court of Judicial Discipline.

PA. CONST. art. V, § 18(a)(7).

[15] Article 5, section 18(b)(5) of the Pennsylvania Constitution declares, in pertinent part: "Upon the filing of formal charges with the [C]ourt [of Judicial Discipline] by the [JCB], the [C]ourt [of Judicial Discipline] shall promptly schedule a hearing or hearings to determine whether a sanction should be imposed against a . . . judge[.]" PA. CONST. art. V, § 18(b)(5).

10

The Supreme Court in *Seeton* held: "[T]axpayer standing may be granted when it 'ensure[s] . . . judicial review which would otherwise not occur,' a circumstance that arises where 'those directly and immediately affected by the complained of expenditures are beneficially affected as opposed to adversely affected.'" *Seeton*, 937 A.2d at 1032 (quoting *In re Application of Biester*, 409 A.2d 848, 851 (Pa. 1979)). However, unlike the petitioner in *Seeton*, Petitioners do not satisfy all of the taxpayer standing criteria.

> Taxpayer standing requires the party asserting it to satisfy five factors:
>
> (1) the governmental action would otherwise go unchallenged;
>
> (2) those directly and immediately affected by the complained of matter are beneficially affected and not inclined to challenge the action;
>
> (3) judicial relief is appropriate;
>
> (4) redress through other channels is unavailable; and
>
> (5) no other persons are better situated to assert the claim.

*Phantom Fireworks*, 198 A.3d at 1216 (quoting *Pa. Fed'n of Dog Clubs v. Commonwealth*, 105 A.3d 51, 58 (Pa Cmwlth. 2014), *aff'd*, 115 A.3d 309 (Pa. 2015)).

Even if this Court were to agree that Moulton's purported Rule 703(G)(1) violations "would otherwise go unchallenged" because the Common Pleas Judges "are not inclined to challenge" them, *id.*, judicial relief is not appropriate because Petitioners admit that Senior Judge Shenkin, who replaced the Common Pleas Judges in the 2015 Litigation, was better situated than Petitioners to raise Moulton's failure to comply with the law. *See* Ans. to Prelim. Objs. at 13-14. Further, there is redress available to Petitioners in that they could have filed

11

complaints with the JCB pursuant to article 5, section 18(a)(7) of the Pennsylvania Constitution (authorizing the JCB to receive complaints from individuals) regarding the Common Pleas Judges' purported Rule 703 violations, and reported Moulton to the Office of Disciplinary Counsel, which is the body tasked with investigating complaints by individuals (including private citizens) of attorney misconduct[16] and determining whether the allegations warrant formal disciplinary action before the Supreme Court's Disciplinary Board.[17]  *See* Sections 85.1 to 95.3 of the Disciplinary Board Rules, 204 Pa. Code §§ 85.1-95.3.  Therefore, because Petitioners failed to satisfy the necessary criteria, they also lack taxpayer standing.

Based on the foregoing, Petitioners lack standing to bring this mandamus action against Moulton.[18]  Accordingly, the Petition is dismissed. [19]

---

[16] Although Moulton previously served as a Superior Court judge, he was not a sitting judge when he was Court Administrator.

[17] The Disciplinary Board oversees the professional conduct of attorneys and ensures compliance with ethical standards.

[18] Notwithstanding, this Court cannot grant mandamus relief.

> To state a claim for mandamus, a petitioner **must establish** the following three elements: (1) **a clear legal right to relief in the petitioner**; (2) **a corresponding duty in the respondent**; **and**[] (3) **the lack of any other adequate and appropriate remedy**.  *Wilson v. Pa. Bd. of Prob. & Parole*, 942 A.2d 270, 272 (Pa. Cmwlth. 2008).  "Mandamus is not available to establish legal rights but only to enforce rights that have been established."  *Smires v. O'Shell*, 126 A.3d 383, 387 (Pa. Cmwlth. 2015) (citations omitted).

*Baron v. Dep't of Hum. Servs.*, 169 A.3d 1268, 1272 (Pa. Cmwlth. 2017) (emphasis added), *aff'd*, 194 A.3d 563 (Pa. 2018).  Further, "where any doubt exists, mandamus relief will not lie." *Kegerise v. Delgrande*, 183 A.3d 997, 1004 (Pa. 2018).

Here, although Moulton had a statutory duty to notify the JCB of judicial violations of Rule 703, Petitioners have failed to show they have any clear legal right to relief in Moulton failing to do so, if in fact he did do so, and they had other adequate and appropriate remedies to ensure that Moulton complied with Rule 703(G)(1).  Therefore, Petitioners failed to satisfy the criteria necessary for this Court to grant mandamus relief.

[19] In light of this Court's ruling on Moulton's Preliminary Objection to Petitioners' standing, this Court need not reach Moulton's sovereign immunity objection.  *See Highley v. Dep't of Transp.*, 195 A.3d 1078 (Pa. Cmwlth. 2018).

<u>Motion to Enforce</u>

In their Motion to Enforce, Petitioners assert that Tuominen, who succeeded Moulton as Pennsylvania Court Administrator, continues to violate Rule 703(G)(1) by refusing to report her fellow Administrative Office of Pennsylvania Courts' counsel, Nicole A. Feigenbaum, Esquire's (Attorney Feigenbaum) clients - the Common Pleas Judges and Senior Judge Shenkin - to the JCB. Petitioners specifically claim, by failing to do so, Tuominen violated: Section IV of the UJS ECOC) (Conflicts of Interest and Related Prohibitions), Paragraph C (Special Treatment and/or Special Favors):[20] (1) by improperly permitting her relationship with Attorney Feigenbaum's fellow clients, the Common Pleas Judges, to create the appearance of influencing her not to report their judicial conduct violations to the JCB, *see* Motion to Enforce ¶ 4; Section IV of the UJS ECOC, Paragraph E (Misuse of Employment Position, Equipment, or Supplies); (2) by improperly using her and Attorney Feigenbaum's positions to actively cover up the Common Pleas Judges' and Senior Judge Shenkin's misconduct, *see id*. ¶ 5; Section VII of the UJS ECOC (General Standards of Conduct), Paragraph A (relating to appropriate and lawful conduct), *see id*. ¶ 6; Section VII, Paragraph B.i (relating to treating persons with respect and impartiality); and (3) by disrespectfully treating Petitioners and failing to act impartially, *see id*. ¶ 7; Section VII of the UJS ECOC, Paragraph B.iii (requiring compliance with lawful directives unless such compliance would be injurious to the health and safety of themselves or others), *see id*. ¶ 8; Section VII of

---

[20] www.pacourts.us/Storage/media/pdfs/20210211/021935-codeofconduct-000212.pdf (last visited Dec. 16, 2025). "This Court may take judicial notice of public information on an official government website." *Cunningham v. Unemployment Comp. Bd. of Rev.*, 330 A.3d 20, 23 n.1 (Pa. Cmwlth. 2025).

13

UJS ECOC, Paragraph B.iv (relating to appearances of impropriety), *see id*. ¶ 9; and Section VII of the UJS ECOC, Paragraph B.viii (relating to intentionally false and misleading statements), *see id*. ¶ 10. Petitioners ask this Court

> to stay these proceedings pending potential resolution of this matter by Teresa Ficken Sachs[, Esquire (Attorney Sachs),] Counsel to the Supreme Court . . . , acting on behalf of the Supreme Court . . . , and/or potential resolution of this matter by applicable disciplinary policies outlined in the Personnel Policies of the Unified Judicial System, and/or [Tuominen's] voluntary compliance with [Rule] 703(G)(1)[.]

Motion to Enforce at 15.

Moulton opposed the Motion to Enforce on the following bases: neither Tuominen nor Attorney Sachs are parties to this action; Petitioners lack standing to ask this Court to stay the mandamus action and/or direct Attorney Sachs to enforce the UJS ECOC; Petitioners offer no legal authority to support that this Court may enforce the UJS ECOC; and Petitioners may file complaints with the Office of Disciplinary Counsel if they believe Moulton committed misconduct.

Notably, the Motion to Enforce does not seek any remedy relative to Moulton, who is the Petition's sole respondent and the Pennsylvania Court Administrator with the duty to notify the JCB of the Common Pleas Judges' purported violations of Rule 703.[21] Petitioners also failed to specify an interest they have in their enforcement action "that surpasses the common interest of all citizens in procuring [a Pennsylvania Court Administrator's] obedience to the [UJS ECOC]."

---

[21] This Court acknowledges that Pennsylvania Rule of Appellate Procedure (Appellate Rule) 502(c) allows the automatic substitution of a successor when a public officer ceases to hold office. *See* Pa.R.A.P. 502(c). However, "[a] person will be deemed a public officer if the person is appointed or elected to perform duties of a grave and important character, and which involve some of the functions of government, for a definite term." *Green v. Wolf*, 176 A.3d 362, 366 (Pa. Cmwlth. 2017) (quoting *Werner v. Zazyczny*, 681 A.2d 1331, 1337 (Pa. 1996)). Because he served at the Supreme Court's pleasure and not for a definite term, Moulton was not a public officer whose position was subject to Appellate Rule 502(c).

*Phantom Fireworks*, 198 A.3d at 1215. Even if this Court had some legal authority to enforce the UJS ECOC against Moulton and/or his successor, Petitioners failed to express that they or their 2015 Litigation would be harmed or benefitted by this Court doing so.[22] The Motion to Enforce does not reflect that Petitioners have taken advantage of their opportunity to register a private complaint with the Disciplinary Board regarding a Pennsylvania Court Administrator's purported violation of his/her duties. Therefore, they lack traditional standing to file the Motion to Enforce. Moreover, because Petitioners do not claim that no one is better situated than they are to enforce the UJS ECOC and they have the aforementioned administrative remedies available to them, they lack taxpayer standing.

Thus, for nearly the same reasons Petitioners lack standing to bring the mandamus action against Moulton, they lack standing to have this Court enforce the UJS ECOC against Moulton and/or his successor. Accordingly, Petitioners lack standing to bring the Motion to Enforce.

**Conclusion**

Based on the foregoing, this Court sustains Moulton's Preliminary Objection based on standing and dismisses the Petition. This Court also dismisses the Motion to Enforce due to Petitioners' lack of standing.

---

[22] Section IX of the UJS ECOC (Designated Sanctions) provides, in relevant part: "Employees of the Unified Judicial System who fail to properly follow these standards of conduct will be subject to disciplinary action including the termination of their employment. The applicable disciplinary policies for state-level court employees are outlined in the Personnel Policies of the Unified Judicial System." www.pacourts.us/Storage/media/pdfs/20210211/021935-codeofconduct-000212.pdf (last visited Dec. 16, 2025).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah R. Malloy and            :
Edward C. Malloy,                 :
           Petitioners         :
                                     :
         v.                        :
                                     :
Hon. H. Geoffrey Moulton, Jr.,      :
Pennsylvania Court Administrator,    :     No. 493 M.D. 2021
           Respondent        :

PER CURIAM

## O R D E R

AND NOW, this 17th day of December, 2025, the Honorable H. Geoffrey Moulton, Jr., Pennsylvania Court Administrator's Preliminary Objection to Deborah R. Malloy's and Edward C. Malloy's (Petitioners) Petition for Review (Petition) based on standing is SUSTAINED. The Petition is DISMISSED.

Petitioners' Motion to Enforce the Code of Conduct for Employees of the Unified Judicial System is DISMISSED because Petitioners lack standing.